We move to the final case this morning, United States v. Castenta. Castaneda, I think. Castaneda. Castaneda. Close enough. Mr. Singleton, I mispronounced your client's name. And so did I the first couple dozen times I addressed him. Castaneda. Thank you. May it please the court. I'm Norm Singleton. I represent Marcos Castaneda in Appeal No. 18-1541. This is the appeal of the sentencing in a methamphetamine conspiracy case with 20 members of the conspiracy prosecuted. In sentencing the first 19 defendants, the district court used the guidelines for a mixture of substance containing methamphetamine. In sentencing Mr. Castaneda, the 20th, the court applied the ICE guidelines, which with the weight that was found resulted in a four-level increase in the base defense level. As I believe I pointed out in my brief, I'll be frank with the court. I have not found a case on point with Baxter on point. However, this court held that where a district court attributes one drug quantity to some conspirators, it may not attribute a different drug quantity to other conspirators on an identical record. USP Cooper 767 F3 F3rd 721. This is a very common sense rule and should extend to drug types for consistency purposes as well as fairness concerns. I think the reason that I was unable to find on point authority is that there is a procedural step that goes back to the Apprendi days as the guidelines became advisory, which requires in a conspiracy case that the fact finder first determines the drug amount and type attributable to the entire conspiracy. The next step is when the sentencing judge makes defendant specific findings as far as drug amount. And that step obviously didn't apply in this case. Frankly, your honors, just about everything that I had to say on this point is contained in the brief and two specific pleadings. It would be record 26, the objections to the pre-sentence report and record 31, the sentencing memorandum. And unless the court feels it necessary that I repeat those, I won't. Thank you, counsel. As far as the second argument, the court found that Mr. Costaneda was responsible. His offense conduct and all relevant conduct totaled three kilograms of methamphetamine. The court also found that he was the source of supply for one year from roughly May 2015 to May 2016. He was the sole source of supply for the conspiracy, which, according to the government, distributed various weights, the lowest of being 27 kilograms. When Mr. Costaneda testified that, no, it wasn't 27, judge, it was only three. The judge found that he denied relevant conduct and declined to give the deduction for acceptance responsibility. The defense's position is that was an inconsistent finding. He couldn't have been the source of supply and also only been responsible for three kilograms for a conspiracy that distributed nine times as much. That's an internal inconsistency. That's by definition clear error. And it caused a miscalculation of the sentencing guideline range, which becomes procedural error, which requires resentencing. If there are questions, I'll do my best to answer them. If not, I will save the rest of my time for rebuttal. All right, thank you very much. Thank you. Mr. Graber? Good afternoon. May it please the court. My name is Dan Graber. I represent the government in this case. I handle all 20 defendants in this prosecution. First argument they're making is this inconsistent treatment of the defendants because... They wouldn't let me. They made me break it up into six or seven... I can understand that, having done that before. Yeah, I wanted to. So the argument they're making is that the line of cases in the brief, the Barnes and the Taylor and this Cooper line of cases that talk about when you're dealing with a drug conspiracy and you're dealing with, let's say, this is the X amount for the drug conspiracy for these defendants. And that's what you find. Then when you have this group of defendants, co-defendants in the same conspiracy, you can't have different drug amounts. In this court's health, you can't do that different treatment. The key, though, being when it's the same factual record or identical record. Those are the key magic words that this court uses in those cases. That's not the case here. He walks into the sentencing hearing and throws a hand grenade. We had the thing set up. It's a pound a week. He was in the conspiracy for a year. That's 60 pounds, 27 kilos. He walks into the sentencing hearing, gets on the stand, and says, it ain't me. It's some other guy. I'm a weed dealer, and I'm selling weed to Chris Lewis. I'm not having anything to do with Joe Kujawa. I went maybe three times and carried some loads. Didn't even know what was in the packages and carried loads for Chris Lewis. Never gave it to Kujawa. That's what Judge Peterson has in front of him when he's trying to do a sentencing hearing here and come up with the drug amounts. We're right out of the Barnes-Taylor Cooper line now because we're with the new factual record. Judge Peterson says, you're saying three kilos? Okay, you got three kilos. Then the judge says, it's ice. There was ample, reliable, credible evidence to show that it was ice. Castaneda told Kujawa, this is pure, uncut stuff. Everyone, Kujawa says, it's glass shards. Looks like glass shards. Chris Lewis, his twin brother that was helping him, it's glass shards. One of their customers, their main customer, Anthony Rogers, says, it's glass shards. We had an undercover, Tony Cueto, made two buys, sent it to the DEA lab, 90% pure. We watched Kujawa take a load, deliver it to Pat Keenan, and on February 26, 2016, we took it down. We found a pound of meth. We took it to the DEA lab, 100% pure. All the meth that we've ever taken off in this case has always been above 80%. It's been ice. Judge Peterson, when he sentenced three of these defendants, dealt with backup findings of ice. In the supplemental appendix, page 838 and 839, Jamie Pankow, he goes right into it and says, Look, Ms. Pankow, I can see 24 kilos, and I also have this pound of meth that's ice. That's a level 32, and it's 453 grams. All I need is another 60 grams, and I'm at 500, which is a level 34, which is where you're at on mixture. So I feel very comfortable in finding a level 34. He uses the ice as a backup to say why he's so comfortable on finding on the mixture, and he does that with Jamie Pankow, he does that with Pat Keenan, and he does it with Joe Kujawa. So this isn't a situation where different defendants are being treated differently. He did backup findings on three of these defendants with regards to that ice calculation. Can I ask you a question? Sure. I'll tell you an impression I had, and you can tell me if it's right or wrong. Okay. From reading this, that the fact that Mr. Castaneda was number 20 in line was quite meaningful to the way Judge Peterson approached it because, of course, he would have had the knowledge of the 19 that preceded this defendant. And when this dispute arose at sentencing, I kind of read Judge Peterson to say, look, I'm just going to focus on the six pounds of meth that you admitted, you know, to, I don't know what, to distribute it or being caught with or something, and that's going to put this at level 36, and I'm not going to argue with you beyond that. And so my impression of that, it may have been mistaken, is that may well have redounded substantially to the defendant's benefit, that there may have been a lot more weight that could have been attributed to Mr. Castaneda had the district court sought to do so. 81 kilos. Is that? Yeah. 81 kilos. That's what they were staring down the barrel at. Which is what, level 43? Yeah. Just right out of the box? Right out of the box. So, yeah, the judge, Judge Peterson, was giving him a big break, and then downward varies 52 months and gives him 240. His guidelines range at three kilos was 292 to 365. And that's the part that strikes me as quite informed by the fact that 19 came before, and he knows where the 19 landed at the end of the day. And that segues into the other issue they're making, which is the second argument of inconsistent findings by the judge as to the three kilos versus 27 kilos. He didn't deny acceptance because Castaneda was saying, well, I was three and the government's saying 27 and you can't reconcile the two, therefore I'm not giving you acceptance. That's not why he didn't get acceptance. Judge Peterson made clear, you're not getting acceptance for two reasons. One, your cover story doesn't make any sense. I don't find it credible. Your cover story that you're a weed dealer with Chris Lewis, I don't find credible. And your cover story that you just picked up methamphetamine, you didn't even know what it was three times, I don't find credible. So your cover story's not credible. I also find that you're frivolously contesting relevant conduct as to your role in this conspiracy, because you're saying you're not the tip of the iceberg, the source. And I don't believe that. You're saying that you were a mere transporter a couple times. That's the reason he was denied acceptance, not because he was contesting drug amount. So this inconsistency doesn't exist. Judge Peterson, if you look, I think it's Record 42, this written statement of reasons, page 5. He says when he's making the drug finding, minimally it's three kilos, it's at least three kilos, and it's a very conservative estimate. So the judge is setting the floor, not the ceiling. That's not inconsistent with making the finding that he's still the source of supply, that he can still supply this conspiracy. So there is no inconsistent findings to create clear error. It's also why he didn't err in not giving this man acceptance. The last argument they make is this Eshman case. They're trying to say, well, under Eshman, if you look at Eshman, Eshman was a drug case where the defendant came in early, played guilty, expressed remorse at sentencing, and then made a good faith challenge to the drug computation. And that was a case, it was methamphetamine, but they found him with pseudopills. And so the court had to do the calculation to go from pseudo to meth in that case. And the defendant in that case was saying, you're doing it wrong because you're doing a one-on-one. And I've called experts that said, my lab is so primitive, at best you can get 50%, not 100% based on the pills. And because he did that, the judge denied him acceptance, saying you're challenging the numbers. Here, he's not losing acceptance because he's challenging the numbers. Eshman doesn't apply. He lost acceptance because his cover story didn't work and because he denied his role. Moreover, he wasn't doing a good faith challenge of the drug computations. This wasn't in good faith. In the PSR objections, he attacks based on unreliable evidence. Kujawa is not reliable. Sentencing memo attacks the sentencing numbers based on unreliability. Walks into the sentencing and says, nothing about reliability and everything. Well, Mr. X, that's the guy that did it, not me. I'm just a mere driver. I'm a mere mule. Completely flipped it around. He sandbagged the court. Record 51, page 36, the court says, you sandbagged me. That's not acting in good faith. That's holding back and playing hide the ball. That's not acting in good faith in terms of a challenge on the sentencing acceptance. And even given all that, the court sentenced him and said, you know what? And this was a big thing for Judge Peterson with 20 of these guys. I'm going to give you a sentence which parity with similarly situated defendants. That's what's key here. And he brought him down to get him right where Kujawa and Kuntana and Rogers was based on their level in the conspiracy. And he gave him that and got it down to 240, which was 52 months below the low end. It's for that reason, Your Honor, that the court didn't err on denying acceptance, didn't err in fining that drug amount. And I'd ask the court to affirm the judgment. Great timing. Great timing. Thank you very much, Counsel. I'll have to make a lot of points pretty quickly. The government's position is Kujawa was credible. He's not. Kujawa was all over the map. He made numerous statements that were contradicted and contradictory, and some of them were basically ludicrous. His statement about consternated sources of supply being the Mexican mafia. No. The Mexican mafia doesn't traffic in drugs. They're a prison gang. And five years ago, the FBI said the group had 157 members, 99% of them incarcerated. And Kujawa's statements are dotted with these kind of inconsistencies. This story basically doesn't make sense. Consternated shows up beginning of the third year of the conspiracy. Before that, Kujawa claims his conspiracy is being supplied by a prison buddy named Sam, last name unknown. Then, as Kujawa is going to prison, as his supervised release is revoked, he decides to switch over to Consternated, this guy he doesn't know from anybody who his brother met at a Little League game. Kujawa said, I dealt with him for a year. Kujawa was in prison for five months of that year, or on house arrest. And through all of this happening, nothing indicates that there was any interruptions in supply. In fact, co-conspirators were also supplied during that time frame by another one of Kujawa's ex-conspirators named Ricky Contreras. Our point was not that the government mischaracterized what we were trying to do. We first said Kujawa is not credible. We came in and said, this is the story. This is what happened. We said, under oath. As far as I know, Kujawa never testified before the district court. It's just the statements as provided by the government. This court has often said that credibility can be best judged by the district court who witnesses someone testify and can view his demeanor. And Judge Peterson actually credited, complimented Consternated's demeanor. He said, I just don't believe you. Well, why didn't he believe him? Because the court was invested in Joe Kujawa after 19 previous sentences, where Kujawa cooperated and gave information on 19 of 20 conspirators, including himself. All of them, except Consternated, were at or below his level. Well, going up is different from going down. Typically, if you're informing downward, you have greater knowledge, and the people you're talking about are less dangerous. The identical record. The first government argument was, well, the record is not identical. It deflects the point. The record is identical as far as the type of drug is concerned. And that's the critical aspect. The backup determinations of the ICE guidelines as opposed to the powder guidelines, it's irrelevant. The final guideline calculation wasn't based on the backup determinations. The government describes the district court's finding of the three kilograms amount as the floor and the ceiling. But that's basically a meaningless statement. That is the amount. It may have been a conservative estimate, as the district court said in the Statement of Reasons, but conservative means marked by moderation or caution. It doesn't mean ridiculously lower than what I believe happened. The court opted to credit Consternated on the drug amount and Kujawa on the role of defense. That was the critical inconsistency, and that spawned inconsistency after inconsistency that created the clear error that led to the procedural error of miscalculated guidelines and requires resentencing. Thank you. Thank you, counsel. Thanks to both counsel. And the case will be taken under advisement, and the court will stand in recess.